United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL V. A., Plaintiff, v. ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, et al., Defendants. | Case No. 26-cv-02330-JST<br>**ORDER GRANTING MOTION TO DISMISS**<br>Re: ECF No. 41 |

Before the Court is a motion to dismiss filed by Defendant Anthem Blue Cross Life and Health Insurance Company ("Anthem") in an action under the Employee Retirement Income Security Act of 1974 ("ERISA"). ECF No. 41. The Court will grant the motion.

## I. BACKGROUND

The following facts are drawn from the complaint and the Plan Benefit Booklet, which is incorporated by reference into the complaint.[1] Daniel V.A. is an employee of Gilead Sciences, Inc., and a participant in the Gilead Sciences, Inc. Health Plan, an employer-funded welfare benefits plan. ECF No. 2 ¶¶ 1–3. Gilead is the plan funder, sponsor and administrator, but Anthem provides claim processing and provider contracting services. *Id.* ¶¶ 7, 14–16.

Daniel V.A's minor child, J.K.A., received 12 weeks of medically necessary treatment at blueFire Wilderness Therapy ("blueFire"), an outdoor behavioral health program for adolescents.

[1] Courts have repeatedly held that ERISA benefits plan documents satisfy the test for incorporation by reference and may be attached to a defendant's motion to dismiss an ERISA benefits action. *See, e.g.*, *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *as amended* (July 28, 1998), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 66, 681–82 (9th Cir. 2006) ("Because Parrino's claims rest on his membership in FHP's plan and on the terms of the plan, documents governing plan membership, coverage, and administration are essential to his complaint."). Plaintiffs do not challenge Anthem's reliance on the plan terms booklet, nor do they dispute its authenticity.

United States District Court
Northern District of California

ECF No. 2 at 2. "Defendants denied payment for any of the treatment because blueFire was not an in-network provider[,] so the claims for services it provided were excluded as non-emergency out-of-network services received without prior authorization." ECF No. 2 at 2, *id.* ¶¶ 35, 56. The denial of benefits required Plaintiffs to pay more than $58,000 out of pocket for J.K.A.'s mental health and substance use disorder treatment at blueFire. *Id.* ¶ 58.

On July 9, 2025, Plaintiffs filed this lawsuit under ERISA. *Id.* ¶ 8. Anthem filed a motion to dismiss on April 30, 2026. ECF No. 41. Plaintiffs opposed on May 28, 2026. ECF No. 46. Anthem replied on June 22, 2026. ECF No. 58.

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331.

## III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering the pending motions to dismiss, the court accepts as true factual allegations in the complaint, construing them in the light most favorable to the plaintiff. *Hunt v. PricewaterhouseCoopers LLP*, 159 F.4th 603, 611 (9th Cir. 2025).

## IV. DISCUSSION

### A. Section 1132(a)(1)(B) Claim

A participant in a Plan governed by ERISA may bring a "civil action" to "recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). To state a claim under that provision, a plaintiff must establish that the "terms of the plan" require payment of the benefits

sought. *See Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996).

The plan excludes from its coverage "[s]ervices or supplies that are provided by a non-participating provider without an authorized referral, except emergency services or urgent care." ECF No. 41-2 at 63. Anthem therefore asserts that Plaintiffs are not entitled to reimbursement for J.K.A.'s treatment at blueFire because "Plaintiffs do not allege that blueFire was an in-network provider, that Plaintiffs obtained prior authorization for Patient's treatment at blueFire, or that Patient's treatment constituted 'emergency or urgent' care within the definition of the Plan." ECF No. 41 at 6, 10. Plaintiffs raise two arguments in defense of their benefits claim: that they were entitled to a "post-service review" through which they could have secured the needed authorization, and that the treatment was in fact urgent care under the plan. Because the terms of the plan do not support either argument, Plaintiffs fail to state a claim under Section 1132.

**1. Post-Service Review**

First, Plaintiffs contend that the plan permits post-service authorization, which they were wrongfully denied. ECF No. 46 at 11. They draw on the plan's definition of "Post-service Review," which notes that such reviews "are performed when a service, treatment or admission did not need a precertification, or when a needed precertification was not obtained." ECF No. 2 ¶ 37; ECF No. 46 at 12. The problem is that the Plan's exception to the rule of non-coverage for non-participating providers is for "authorized referrals," ECF No. 41-2 at 63, and the Plan clearly defines "authorized referral" and "precertification" as distinct processes:

> Authorized referral occurs when you, because of your medical needs, require the services of a specialist who is a non-participating provider, or require special services or facilities not available at a contracting hospital, but only when the referral has been authorized by the claims administrator before services are rendered and when the following conditions are met: 1. there is no participating provider who practices in the appropriate specialty, or there is no contracting hospital which provides the required services or has the necessary facilities; and 2. that meets the adequacy and accessibility requirements of state or federal law.

ECF No. 41-2 at 124. Precertification, on the other hand, is defined as follows:

> A required pre-service review for a benefit coverage determination for a service or treatment. Certain services require precertification in order for you to get benefits. The benefit coverage review will include a review to decide whether the service meets the definition of medical

> necessity or is experimental/investigative as those terms are defined in this booklet.

*Id*. at 86. "Authorized referral" therefore focuses on the availability of an appropriate in-network provider, while "precertification" assesses the necessity and nature of the treatment. *See also* ECF No. 41-2 at 87–88 (listing the types of medical services for which precertification is required without referencing the participating or non-participating status of the provider).

"Services . . . that are provided by a non-participating provider without an authorized referral" are explicitly excluded from plan coverage. And while the definition of post-service review suggests that it is a process available to compensate for the absence of precertification, it does not raise the same inference with respect to an absent "authorized referral." Plaintiffs' theory that post-service authorization should have been available is therefore not supported by the text of the Plan. It cannot save their claim, which is otherwise clearly excluded from the Plan's coverage.

**2. Urgent Care**

Another exception to the coverage exclusion for non-participating providers is for "emergency services or urgent care." ECF No. 41-2 at 63. Plaintiffs argue that "a reasonable factfinder could conclude that J.K.A.'s treatment at blueFire was 'urgent care' from the Complaint's allegations" because "the care at issue 'likely helped save [J.K.A.'s] life'" in light of her "serious diagnoses, extreme and self-harming behavior patterns, and the nature of the intensive treatment [she] received at blueFire." ECF No. 46 at 12–13. As a preliminary matter, no information concerning "extreme and self-harming behavior" and no detail about "the intensive treatment . . . received at blueFire" is contained in the complaint. Even if such information had been included, however, it would not suffice to establish that blueFire provided J.K.A. with urgent care.

The plan defines "urgent care" as follows:

> Services and supplies received to prevent serious deterioration of your health . . . resulting from an unforeseen illness, medical condition, or complication of an existing condition, including pregnancy, for which treatment cannot be delayed. Urgent care services are not emergency services. Services for urgent care are typically provided by an urgent care center or other facility such as a physician's office. Urgent care can be obtained from participating providers or non-participating providers.

ECF No. 41-2 at 36. As Anthem argues, the allegations in the complaint do not support a finding that J.K.A.'s treatment at blueFire satisfied the definition of "urgent care." ECF No. 58 at 5. The plan requires urgent care address an "unforeseen" illness, condition, or complication of an existing condition, but Plaintiffs allege that J.K.A. had suffered from "intense, debilitating insomnia, obsessive compulsive disorder, anxiety and depression" for "a number of years prior to her admission at blueFire." ECF No. 2 ¶ 24. She had previously "received treatment for her conditions from several mental health professionals." *Id.* ¶ 25. Second, "Plaintiff alleges no facts showing that such a condition resulted in 'serious deterioration of your health . . . for which treatment cannot be delayed.'" ECF No. 58 at 5.[2] Because J.K.A.'s health conditions were not unforeseen and because the complaint does not allege that "treatment cannot be delayed," Plaintiffs have not shown that she received "urgent care" at blueFire. Plaintiffs' claim for a denial of covered benefits under Section 1132 is dismissed.

### B. Parity Act

The Mental Health Parity and Addiction Equity Act, 29 U.S.C. § 1132(a)(3), "requires that any limitations on 'mental health or substance use disorder benefits' in an ERISA plan be 'no more restrictive than the predominant treatment limitations applied to substantially all [covered] medical and surgical benefits.'" *Ryan S. v. UnitedHealth Grp., Inc.*, 98 F.4th 965, 971 (9th Cir. 2024) (quoting 29 U.S.C. § 1185a(a)(3)(A)(ii)). There are three ways that plaintiffs can properly plead this claim: "Plaintiffs can allege that an ERISA plan contains an exclusion that is *discriminatory on its face*, that the plan contains a facially neutral term that is *discriminatorily applied* to [mental health/substance use disorder] treatment, or that the plan administrator applies an improper *internal process* that results in the exclusion of some [mental health/substance use disorder] treatment." *Id.* (emphasis in original). Treatment limitations that may violate the Parity Act may include "restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided under the plan or

---

[2] Anthem also suggests that Plaintiffs were required to plead that blueFire is an urgent care center, ECF No. 58 at 5, but that is not a requirement of the Plan's definition of "urgent care." The Plan's definition rather notes that such care is "typically" provided at an urgent care center or doctor's office. ECF No. 41-2 at 36.

coverage." 29 CFR § 2590.712(c)(4)(ii)(A)-(H).

Here, Plaintiffs argue that the absence of participating wilderness therapy programs violates the Act given the existence of at least one participating skilled nursing, hospice, or rehabilitation facility. ECF No. 46 at 15. Anthem responds that treatment at blueFire could have been covered by the plan had Plaintiffs complied with the procedural requirement of seeking an authorized referral. ECF No. 58 at 7 (describing the plan's provision allowing services rendered by a nonparticipating provider to be covered where the medically necessary services cannot be reasonably obtained from a participating provider). The crux of the dispute is therefore whether the absence of in-network wilderness behavioral health programs violates the Act, despite a plan provision extending coverage where no appropriate in-network providers are available.

As a preliminary matter, the complaint does not plead that the requirement to seek an authorized referral itself violates the Act. The Parity Act claim merely asserts that J.K.A.'s treatment was excluded based on "geographic location, provider specialty, or other criteria" and that skilled nursing and inpatient rehabilitation facilities are not excluded from coverage on the same grounds. ECF No. 2 ¶¶ 74–75. As the complaint also acknowledges, however, the exclusion was not based on those factors, but on Plaintiffs' failure to comply with the procedural requirement of securing an authorized referral. *See* ECF No. 2 ¶ 35. That procedural requirement applies to all out-of-network providers of both mental and physical health services. ECF No. 41-2 at 124.

Even if Plaintiffs had pleaded that the requirement of seeking an authorized referral itself violates the Parity Act, it is not clear they could have been successful without showing that authorized referrals for wilderness programs are denied. The Parity Act focuses on limitations that result in denials of coverage. *See* 29 U.S.C. § 1185a(a)(3)(A)(ii); 29 CFR § 2590.712(c)(4)(ii)(A)–(H) (describing actionable treatment limitations); *see Ryan S.*, 98 F.4th at 973 (holding that "the mere fact that the reasons to deny coverage were identified only because the MH/SUD claims were subjected to an additional layer of scrutiny could violate the Parity Act"). Plaintiffs have not argued that a higher administrative burden in securing coverage—here, by seeking an authorized referral—violates the Act even absent evidence that those who comply with

the procedure are still denied coverage.

Other courts in this circuit have found violations of the Parity Act where (1) all wilderness behavioral therapy programs are categorically excluded; (2) wilderness therapy programs are excluded whether they treat mental or physical illness, but the exclusion is alleged to be applied to mental health programs in a discriminatory manner; and (3) the defendant excluded wilderness behavioral therapy programs from coverage in violation of the Plan. *Gerald S. v. Moda Health*, No. 3:24-CV-00426-YY, 2025 WL 2382654, at *7 (D. Or. July 31, 2025), *report and recommendation adopted*, No. 3:24-CV-426-YY, 2025 WL 2379746 (D. Or. Aug. 15, 2025); *A.H. v. Anthem Blue Cross*, No. 22-CV-07660-HSG, 2023 WL 3819367, at *2 (N.D. Cal. June 5, 2023); *A.Z. by & through E.Z. v. Regence Blueshield*, 333 F. Supp. 3d 1069, 1082 (W.D. Wash. 2018). None of these cases helps Plaintiffs because Plaintiffs have not alleged that coverage of blueFire would have been denied had Plaintiffs complied with the neutral prior authorized referral requirement. Plaintiffs have failed to state a claim for a violation of the Parity Act.

**CONCLUSION**

Both claims are dismissed. Plaintiffs may file an amended complaint within 28 days of the date of this order, solely for the purpose of addressing the deficiencies identified herein. Failure to do so may result in dismissal of the case with prejudice.

**IT IS SO ORDERED.**

Dated: November 16, 2026

JON S. TIGAR
United States District Judge